Why don't we call the next case, please? 310-8653, Eagle, the state of Illinois, Appalachia, by Mark Walshville v. Lionel Watson, a comment by Mark Walshville. Excuse me. Good morning, Your Honors. Counsel. May it please the Court. My name is Brett Zeeuw from the Appellate Defender's Office, and I represent Lionel Watson. I'd like to address both of the issues that I've raised on the appeal, if I could. Your Honors, this case boils down to whether a witness's hunch or a guess that a defendant might have a gun is sufficient evidence to prove that third prong of the aggravated robbery statute that he indicated by his actions that he was armed with a gun or a weapon during the offense in this case. There's no dispute that Mr. Watson never verbally indicated that he had a gun, so the only question is whether by his actions he indicated that he did. And looking at the testimony of the two eyewitnesses involved here, Ms. Birch and Ms. Ackerman, Ms. Birch essentially testified that Mr. Watson had his left hand on the counter and that his right hand was in his pocket, essentially, the whole time. Actually, her exact testimony was that it might have been in his... It was always pretty much in his right pocket. That's the exact testimony. But the critical facts are that she testified that she did not see any bulges in the pocket. She testified specifically that he never pointed that pocket toward her. There is testimony that he inched the pocket forward, but it's not clear when he did that. And Birch also never said that to the police when she gave her initial statement about him inching forward with the pocket. Was there one where he brought it up to the counter height? Yeah, that's Ackerman's testimony. Ackerman is the assistant manager who was about 8 to 10 feet behind the teller, who was Birch. She did testify, again, that his hand was in the pocket, but she didn't know it was in there other than his hand and that he did move forward. But again, it's not clear as to when that happened. When he was getting the money, it's not clear what exactly was going on there. But the critical... I think what distinguishes this case from other aggravated robbery cases that analyze this third prong of the statute regarding the gun is that there is some ambiguity regarding what Mr. Watson was doing with his hand in his pocket. Now, obviously, that causes some pause that he has his hand in his pocket. We can't deny that. But the cases where the courts have found that that third prong is satisfied, it's much more clear that the defendant was actually indicating by his actions and also verbally some sort of threat. So there's more kind of two parts to these cases. There's some sort of verbal threat, and then there's more of an unequivocal, clear action that the defendant takes regarding indicating that he has a gun. And there's a couple cases that I cite in the brief. The first is People v. Williams. In that case, the defendant actually pushed the victim's head onto a table and at the same time had his hand in his waist, told the victim that he had just got out of prison, he didn't want to go back, and that he was going to kill someone in there. So that, it's crystal clear that he's indicating that he has some sort of weapon in there and that he's going to do something about it. Well, to the extent that, using your words, that his actions were ambiguous, it would become a question of fact for the charge of fact. Well, sure, it is. And I understand our burden on appeal. But again, I want to bring it back to the ambiguity in this case. This isn't a case that falls... that's like People v. Williams or like People v. Hall, where there's a blockbuster clerk. The defendant asks the clerk if he's ever been shot, is he wearing a bulletproof vest, and does he want to get shot, and then makes a motion to his waist. Again, there's no ambiguity there about what the defendant is doing in that case. And similarly with People v. Brackett, this is a case that the state cited in their response brief. There, the defendant had a coat draped over her arm, but then she's pointing her finger at the victim. Again, there, it's clear as to what the defendant is doing. In our case, there's just more ambiguity about what exactly is going on there. And actually, the case that is most factually similar is a case that didn't analyze that third prong, but the second prong regarding whether there was force or the threat of imminent force. And this is another Williams case from 1976. Again, the state cited this case in their response. In that case, the defendant goes in, he's got both hands in his pockets, and the victim says one of them is in the form of a fist. And then the defendant asked the worker to fill a bag with money. But then the defendant didn't do anything else. He didn't make any motions. He didn't make a motion like he had a gun. And when the court analyzed that, they said, well, there's no what they called a menacing gesture. There's no menacing gesture here, so that reduces his offense to a theft. And where they get this menacing gesture language is from another case called People v. Bradford. And there, the defendant handed a note to a cashier that basically said, you know, give me the money. And then right when the clerk looked up, pretty much simultaneous to that, the defendant made a motion with his hand into a bag that he had on his shoulder. So again, there's more. In all these cases where they found either that third prong that they indicated they had a weapon or that force prong based on the possession of a gun and a threat is that there's a connection between either some sort of verbal threat and then a subsequent action, a move to the waist, a pointing of the finger with the coat over the gun, or there's, you know, I'm putting your head on the table and I just got out of jail and I don't want to go back and I'm going to shoot someone. There, it's unequivocal. Here, the testimony is just much more ambiguous. I didn't know what else, if anything, besides his fist was in his pocket. He moved it forward. The teller, he never pointed that pocket at me. He never threatened that he had, he never said he had a gun. He never verbally threatened to do anything. He raised his voice when the teller wasn't handing over the bigger bills and slapped his hand on the table. But again, I think that Mr. Watson's case is closer to the People v. Williams case where the court said that they didn't find this menacing gesture. What else could he have been doing? That's a good question. I think the same thing could be asked for the defendant in the People v. Williams case is why have your hands in there? But it's ambiguous. And we're hanging our hats on the fact that there is no, there is no menacing gesture. I mean, if Mr. Watson had pointed his finger in his pocket and made some sort of motion or even just pointed the pocket at the teller, I don't think we'd be here today. That argument is obviously not nearly as tenable as the one we're making. But based on the testimony, his hand is in there and it's not clear when, but he goes up and, you know, it's up here and puts the money in and then goes. They never found the gun, right? No. If the court doesn't have any other questions on the first argument, I just respectfully request that this court reduce his conviction from aggravated robbery to theft. And regarding the second argument of the MSR issue, we're aware that the courts in Illinois have looked favorably upon this argument. But looking at the Illinois Supreme Court case, People v. Poland, I think compels a result that Mr. Watson shouldn't have, should have received two years of MSR as opposed to three because he was convicted of aggravated robbery, which is a Class I felony, and that carries a two-year MSR term. He wasn't convicted of a Class X felony, which carries a three-year MSR term. In Poland, there were similar statutes, similar sentencing statutes involved. In Poland, the defendant had pled guilty to, it was five robbery charges and he pled to a 30-year prison term. He moved to withdrawal his plea because he argued that his 30-year sentence was void  was 28 years based on the statute that involves the maximum aggregate consecutive term you can get. He argued, I got convicted of a Class, these are Class II felonies, therefore the maximum would be two 14-year terms or 28, 30 years too much. So the issue before the Poland court was whether do you look to the class of the underlying offense or do you look to the Class X sentencing range. So was the maximum 120 or was the maximum 28? The court looked at the relevant statutes and said, well, the defendant has to be sentenced as a Class X offender, but nowhere in that statute does it say you treat the underlying offense as a Class X offense. So isn't MSR part of a sentence? It is. MSR is part of a sentence, but there's nothing in that MSR statute that says when you are sentenced as a Class X offender that you also then serve a Class X sentence. What the MSR statute says is that it holds that you look to the underlying offense. There's nothing in either of those statutes that makes it clear, and I think that's the problem. I mean, the legislature should make it clear. Either put it in the MSR statute or put it in the Class X sentencing statute and tell us what to do. Should they get the three years MSR because they're sentenced as a Class X offender or should they get the two years because the underlying offense is a Class I or a Class II? Here it's a Class I. But it's not this court's job to rewrite statutes. I mean, at best it's ambiguous. So in that situation, the rule of lenity should apply in the defendant's favor and he should only have to serve the two years of MSR. This court addressed the issue in Watson, but nowhere in the decision does it talk about Poland. Well, in that case, Mr. Watson, I respectfully request this court to reduce his MSR term to two years and also pursuant to Argument 1 to reduce his conviction to theft. Thank you. Thank you, Mr. Zeeb. Mr. Hostel. Okay, please, court. The defendant asserts that the plaintiff, or that the people failed to prove the third element that during the robbery defendant indicated to the employees of the credit union, Santa Cruz and Ackerman, that he was armed. The aggravated robbery statute does not require that the victim see a weapon or that the defendant actually be armed. The statute specifically states that this offense is applicable even if it is later found that the defendant had no firearm or other dangerous weapon in his or her possession. People acknowledge that the testimony indicated  during the course of this robbery. Sandra the teller testified that during the robbery the defendant raised his coat with his right hand in the bulging pocket to a level above the counter and moved it toward her. The defendant eventually yelled his demands at Sandra, who's only two feet away approximately across the counter, and he's repeatedly pounding his hand on the counter and yelling that he wants money. When she first handed him lower denomination bills, he wants, you know what I want, he wants the big bills. Initially, when she started to move toward the alarm, he said, don't make any motions. And then he looked over at Don, the supervisor nearby, and said, don't move. So he's clearly implying a threat through his words at that point. Don't make any motions, don't make any moves. Now when Sandra looked down at his coat to see if there was a weapon, his eyes followed her eyes down. She stated that his pocket was protruding outward from the coat, and he kept his right hand in his pocket at all times during this robbery. Those facts, combined with the way he moved his hand and coat, led Sandra to believe that he was armed. Don, the supervisor, testified that the defendant motioned the coat toward Sandra and that he edged forward with his pocket. Apparently, the defendant caused the coat to bulge in such a way that it looked like a gun barrel because Don stated in her testimony, whether it was his finger or not, I don't know. Obviously, by keeping one hand in his pocket and moving it up in the counter at the same time that he began to yell his demands and he's pounding on the counter, he intended to communicate that he was armed. He scooped up the money with just his left hand. If he had not intended to communicate to them that he was armed, he simply would have pulled his hand out, and he had a lot of money, apparently, that he was scooping up and stuffing into his coat. He could have pulled that right hand out and started scooping money with that right hand also, but he kept it in the pocket at all times. He's clearly trying to indicate that he's armed. People note that the jury were given, in addition to the instructions for aggravated robbery, they were instructed on the lesser-included offense of a robbery. Now, robbery, of course, does not include the third element required. So obviously, had the jury found that the defendant had not indicated that he was armed, they would have found him guilty only of the lesser-included charge of a robbery and not aggravated robbery. I don't know if people are going to stand on their brief or any other argument regarding this first issue, and we ask that you affirm his conviction and sentence for the aggravated robbery. As far as the second issue that the defendant raised about his MSR term, the defendant acknowledged that this court in Watkins reached the conclusion that on the extended term, the class X sentencing, that the term is the three-year MSR that applies to a class X and not the two-year that goes to the lower classifications of felony. He relies on the case of Pullen. The Pullen court never addressed the MSR term at all. What they talked about was the maximum permissible sentence imposed, and that case should have been based on a maximum permissible sentence for the two class X felonies, or class II felonies rather, not on two class X felonies. So it was the maximum term applicable to the aggregate of the two class IIs. But again, they didn't address MSR. In the Supreme Court address in Thomas, they said, We believe the appellate court correctly found that the legislator intended the phrase defendant shall be sentenced as a class offender to have a mandatory meeting precluding any exceptions. Thomas court clarified that Thomas' defense was not enhanced from a class I to a class X felony. It was simply subject to single punishment enhancement to the class X range. In our appellate brief, we cited the first district case of Rutledge, which did a fairly extensive analysis of a variety of cases that were decided prior to and after Pullen. They also had the Watkins case cited in that, and virtually every district, first, second, third, and fourth, I haven't seen a fifth district case, all have held that the three-year term of MSR applies in the enhanced sentencing to class X. And people asked this court to follow its prior holding in Watkins and the other districts in finding that the defendant's sentence should have included a three-year term of MSR. Do you have any questions for me, Your Honors? No, sir. Thank you. Okay, thank you, Mr. Onstow. Mr. Zeeb, some rebuttal? I'll be very brief, thank you. Thank you, Your Honors. Just regarding the MSR issue, counsel made the point that in Pullen that the MSR statute wasn't addressed, but the point of Pullen is that that did also address the section 55-3C8 regarding the point of Pullen is that you can look at these two different sentencing provisions of the code, and although the class X sentence, the statute does say someone has to be sentenced as a class X offender, that doesn't mean that just because the MSR is part of the sentence that you can't then also look to the MSR statute itself. And so basically the crux of the argument is, again, it comes down to the class of the offense. If this court agrees that he should be given three years of MSR, the court is essentially saying that the class of the offense he committed has been changed, and that definitely isn't square with Pullen and Alivo and those cases that we cited in our brief. Thank you. Thank you, Mr. Zeeb. Mr. Austell, thank you both for your arguments here this morning. This matter will be taken under advisement, and a written disposition will be issued.